Good morning, counsel. The first case this morning is 19-4114, Derma Pen v. 4EverYoung Limited. Counsel, please prepare to argue. All right. We are ready to hear you then. Thank you, Your Honor. My name is Dick Baldwin. I'm an attorney for appellants Derma Pen and DPIBH. May it please the court. The only question before this court is whether the enforcement action brought by Derma Pen and DPIBH in an attempt to enforce their injunction constituted an extraordinary case under the Lanham Act. The court did abuse its discretion because the reasons that it provided in support of that conclusion were irrelevant, erroneous, or duplicative. Counsel, would you consider the criteria under octane fitness to be different materially from that in King? Or is it just a different iteration of the same principle? It seems to be animated by many of the same principles. There may be some distinctions in the right case. This case I don't think requires the court to slice between those two tests and determine the precise contours of those two tests because the reasons that the court provided here are either erroneous, irrelevant, or duplicative in a way that would fail under either test. There may be some distinctions there. The Supreme Court certainly has entertained the idea of some serious movement in the test where previously, as octane fitness describes, that this test was really more directed at some severe bad acts that would warrant attorney's fees. The court, candidly, in octane fitness, is contemplating a move toward a much more expansive permissible zone of discretion for a district court. The extent of that discretion obviously is a question that this court and many other courts will probably try to discern, but this case doesn't require the court to find that because the explanations the court provided here would not satisfy either one of the tests. Counsel, can I just stop you? Do you think the octane test applies? Are you arguing that? I know you say we don't have to decide it, but what test do you think applies? I think that octane is likely the best test for this court to apply. I don't have a whole lot of comfort with octane fitness being the test. Candidly, it seems clear that that is likely the test that should apply, that the circuits seem to be applying and likely would apply going forward. Again, I don't think that this court has to make that decision right now in this case, but if this court does apply octane fitness and uses this case to announce that principle, we would still win and it wouldn't ultimately affect our case. I don't mean to give an equivocal answer by saying that octane fitness is fine with us because we still win under octane fitness, but it's unclear if that's required of the court to decide that right now. Okay, thank you. In light of the district court's reasons being either irrelevant, erroneous, or duplicative, this court should reverse the court's decision or to minimum remand for the court to re-evaluate this question based upon only factors that are correct or relevant. So, to walk through the reasons that the court provided may be the best way for me to present to the court the reasons why a reversal is required here. The court, in one example, stated that the evidence showed that Dermapen has no right to enforce the injunction. There are a couple of problems with this statement. The first is that it's irrelevant, but even if it were relevant, on this record, it's absolutely incorrect. It's irrelevant because when the court granted DPIPH's request to join Dermapen's motion to enforce the injunction, the court explained that Dermapen's motion against the non-parties, quote, shall be treated in all respects as if it were filed on record. And so, if the motion is truly being treated in all respects as if it's being filed, not simply by Dermapen, but also by DPIPH, then whether Dermapen has an independent right to enforce the injunction is simply irrelevant. But on this record, that's also incorrect, and the court had acknowledged that in the past. So, it's important to perhaps step back a bit and point out that the court not only knew of the transfer from Dermapen to DPIPH, it oversaw and ordered the transfer of the mark. And concurrent with that, the court entered the injunction. So, the transfer occurred around the same time as the injunction or the court order approving of the transfer occurred at the same time as the injunction. And yet, in the injunction itself, the court identified both Dermapen and DPIPH as beneficiaries of the injunction. The injunction says Dermapen LLC or any subsequent owners of the mark, including but not limited to a permanent injunction. Secondly, the non-parties filed two motions during the enforcement proceedings raising this precise issue as an attempt to avoid the enforcement proceeding. One was a motion to vacate the injunction based upon this transfer issue, and the court rejected that. The court said that the fact that Dermapen's interest in the mark was transferred to DPIPH after this litigation commenced does not prevent Dermapen from continuing this action, especially where, as here, DPIPH was joined as a party. That's 660 of the record. Similarly, based on the same argument about the transfer, the non-parties moved for Rule 11 sanctions. The court again rejected that argument, and that's at 718 of the record for the same reasons. The court also stated that Dermapen LLC and DPIPH were entitled to no relief against the non-parties. This factor is irrelevant and cannot form the basis for an extraordinary case finding. That's because, as this court recognized in X layer B focused nutrition, the question of whether a party prevailed is a threshold question for the extraordinary case test. It would be true in every instance when the court is considering whether the case was extraordinary that the party had prevailed. This would be a purely duplicative factor that would always be true in any case where the court was deciding if the case was extraordinary. That simply cannot be a factor that this court defers to. Another statement... The district court, if I may, the district court held that you had produced no evidence of damages. In what way is that incorrect? Yeah, that brings me to my next point. That's exactly where I was heading. You saw where I was going. That's incorrect because it's important to situate ourselves in the context of what was happening procedurally. The parties were not litigating a trademark infringement claim where you would perhaps show damages. This was an enforcement proceeding of an injunction. This was the court's order that was certainly premised on trademark law. A collateral attack to the basis for the injunction is irrelevant to whether you have complied with that injunction. Compliance is based upon the terms of the injunction. There were multiple collateral attacks made here. Those are a distraction that appear to have taken the district court down a road of conflating the I'm sorry. Yeah. I thought the court's reasoning, the district court's reasoning was this looked like a suit just to harass somebody. One factor in determining whether it was motivated just by harassment is whether it would benefit the plaintiff at all. I thought this absence of damage to the plaintiff was relevant in that regard. It suggested that you didn't have a legitimate reason to seek this injunction. There was nothing bad happening to you. Am I misunderstanding the court or how do you want to respond to that? Well, that may be one way to read the opinion. It's been difficult to try to understand exactly what the court meant because this reference to damages is unclear. The suggestion has been made in argument but not in the court's findings about harassment or vexatiousness. That is not in the court's order. The court does say that there was no evidence of damages and perhaps an interpretation of that is that there was a question about the economic injury to the where they were awarded an injunction. That injunction was premised upon trademark law, a right to a trademark that they have an economic interest in enforcing and being able to use in the marketplace however they want. The lack of damages even under trademark law is not a positive question. As this court explained in a case called Bishop v. Equinox International, a party for whom their trademark has been infringed, even if they are unable to show actual damages, are nonetheless able to seek a claim for the infringing party's profits. The damages claim may have spoken to vexatiousness or harassment. That could be an interpretation but for this court to conclude that, we would need to revise the court's findings and read into them in a way that, first of all, aren't reflected in the text of the court's order and really doesn't jive with the underlying trademark law about the role that damages plays, even if we were to assume that we're not really talking about compliance with the injunction but somehow allowing for the court to take into account a collateral attack on an injunction. And on that point, I think this court should be particularly wary of incentivizing parties from making collateral attacks on injunctions and seeking fees on that basis, both drumming up attorneys' fees in collaterally attacking an injunction rather than choosing to move, to vacate or dissolve an injunction. And once that injunction is vacated, then making the attack on the underlying substantive law rather than simply trying to say... Yet that is precisely what the district court found you to, as I read the order, found you to have done, namely that the evidence, quote, showed no right to enforce the injunction, end quote, and that the trademark had been abandoned, that, quote, monetary sanctions were imposed on the appellant for misconduct and delay and hiding the ball during discovery, all kinds of what would strike me as unclean hands in equitable terms. It seems to me that you need to overcome some of that to persuade us of your position. Yes, of course. Again, we were entitled to relief under the court's own orders. DPIPH was a party that joined fully to this motion. And in any case, Dermapen was a beneficiary of the injunction. The entitlement to no relief is duplicative of the question of whether the non-parties were the prevailing party. And that would be true in every case. Evidence of damages is a collateral attack on the injunction rather than in any way relevant to the question of compliance with an injunction. The trademark... What is our standard of review on those findings by the district court? Do we owe the district court deference? Are we de novo? What... It's an abuse of discretion standard. And so the district court... That's a pretty deep tunnel for you, Ed. Oh, of course. Of course it is, Your Honor. And if these findings did not so clearly involve collateral attacks that are irrelevant to the question of compliance with the injunction, and instead were an attempt to attack the basis for the injunction, which then there would perhaps be a harder path for us. But the court's conclusions are either so clearly irrelevant because they are putting the cart before the horse in resolving a question about whether a party or non-party had complied with an injunction by allowing a collateral attack on whether or not that injunction should have been issued in the first place. And the non-parties did attempt to vacate that injunction, and the court denied that request. But the non-parties had a chance. They had opportunities to attack the injunction. They failed to do that and instead brought collateral attacks. Those collateral attacks should not be incentivized with these sorts of findings because those questions are irrelevant to those parties' compliance with an injunction. I see I'm nearly out of time. I'd like to reserve a little bit of time for rebuttal. Reserved. Thank you. Mr. Hart? Good morning. Ian Hyatt on behalf of the- Hyatt, I'm sorry. I'm between the devil and the deep blue sea. Glasses are too strong, and no glasses are too weak, so sorry about that. No, that's quite all right. Ian Hyatt on behalf of the Marshall FLEs, Joel Marshall, Sasha Marshall, and D.P. Durham, LLC. May it please the court, counsel, the appellants spent half of their opening brief challenging the district court's finding that the Marshall parties were not in contempt, only to concede on reply that this court lacks jurisdiction over that question. Consequently, with that concession, that determination of no contempt, as well as the factual findings which undergird it, are not before the court. Those determinations are the law of the case, following this court's precedence in cases such as Martinez v. Roscoe. So, what is before the court today is the question of attorney's fees. On appeal, the Durham-Penn parties do not challenge the applicability of Section 1117. They don't challenge the fact that the Marshall parties prevailed, nor do they challenge the reasonableness or the amount of the fees awarded. So, the only real question here is whether this case constitutes an exceptional case. There's little, if any, dispute on the standard of review. The district court applied the octane fitness standard, and the appellants appear to concede that that is appropriate. They also concede, at least in oral argument this morning, that that case loosened the standard, reduced the burden of finding of exceptionality. So, the December 2018 hearing, are those proceedings in the record? I believe they are. I believe transcripts of the proceedings are. I don't have the citation in front of me, but I believe they are. That's all right. We'll find them in the record. And speaking of the standard of review, this court has previously expressed its confidence in the district court's ability to decide which of the exceptional cases, as opposed to routine cases. And that sentiment was echoed by the Supreme Court when it noted that the district court is better positioned to decide whether a case is exceptional because it lives with the case over a prolonged period of time. Let me ask you, perhaps, and this seemed to be what Mr. Baldwin was suggesting, perhaps we could start with the findings of the district court and put together an analysis that this was a by the plaintiff in seeking this injunction. There was no reason to go against these folks. They weren't hurting them. It was just harassment. But the district court didn't actually say that. We have to do too much here to put together an argument that this was an extraordinary case. Can we really just rely on a few statements of factual findings by the district court and then say, yeah, that's exceptional? Or do we require more of the district court? I don't think we need to go so far as to say it was malicious. Instead, the standard, at least under Octane Fitness, is for exceptionality is that the case stands out from the others with respect to the substantive strength of a party's litigating position or the unreasonable manner in which the case was litigated. So certainly malicious would be at one end of the spectrum that would certainly qualify as an exceptional case. But it's not necessary to the determination. Instead, what we're looking at is whether the case was uncommon or not run-of-the-mill. And that's also a reference in Octane Fitness. Before you move on, can I get you to address the discovery issues in this case? We haven't really is based on discovery. That's certainly one of four primary issues that the district court acknowledged that were problematic and led the district court to conclude that this was an exceptional case. In their briefing, the appellants argue that the existence of some discovery issues is not exceptional. But here, what we're talking about is six discovery motions in a three-month period, most of which the appellants didn't even respond to. They failed to respond to discovery, which was targeted at initial disclosures that they were already required to serve without the need for discovery. And it just went on from there. The court awarded fees on those motions, and then the appellants didn't pay those fees until we secured a writ of execution to collect. And so it's a significant record of discovery abuses, and the lack of response certainly animated or influenced the district court's evaluation of the litigation conduct of the appellants below. Can't that be handled just by discovery sanctions? I'm sorry, I didn't quite catch that. Can't that sort of misconduct be handled simply by discovery sanctions? Why impose attorney fees for the whole case because of this? Yes, it can be handled by discovery sanctions, and it was in this case the reward of fees. Those fees were not requested or there was no duplicative request for attorney's fees. But it reflects, again, on the standard that we're looking at here, which is the exceptionality of the case. You don't think that's double counting? No, it's not because... Not in terms of the amount recovered. Right. But in terms of making the case exceptional, you've already... abuse. Why impose an additional sanction? Because if that were the case, then in the most egregious cases, such as this one, where the discovery abuse was rampant, then the district court would be deprived of the power to find an exceptional case, if it was, as your question suggests, duplicative or double counting. In fact, it's the cases where there are discovery sanctions that are most in need of a determination of exceptionality in order to meet the criteria and the purposes of the fee provision in the first place. Counsel, it seems to me that you were cloaked by King with several layers of protection. First, the abuse of discretion review that we would have to conduct. And secondly, Burke v. Rigaldo, in which we held that a district court abuses its discretion when it renders an arbitrary, precious, whimsical, or manifestly unreasonable judgment. Those seem to be strong cloaks of protection to your position in this case. The wrinkle is that the district court didn't rely on King. It relied on Octane, which led to my question this morning. What is your answer to the question of whether applying Octane as the district court did, whether there's any space between Octane and King, and whether the holding in Octane, which is a Supreme Court case, trumps our holding in King, which leads to the third part of my question, and that is, are different standards of review applicable under Octane rather than King? It's a compound question that if I were a trial judge, I'd overrule, but here I get to ask them. I'll do my best, Your Honor, and I appreciate the question. I think it is an important question. I think that under the standards articulated in King as well as in Octane, the district court did not abuse its discretion, either way you look at it. And as we argued in our brief, if there is any daylight between the two standards, we think the district court's decision here satisfies both standards. King recognized that a case may be deemed exceptional because of its lack of any foundation. The plaintiff's bad faith in bringing the suit, the unusually vexatious and oppressive manner in which it's prosecuted, or perhaps for other reasons as well, leaving the door open to the district court's discretion. And so while I think the Octane Finda standard may step back a bit from there, I think under either standard, the district court was well within its discretion here. In addition to the discovery abuses that we've addressed, the court also considered the paucity of evidence presented by the appellants below. The district court found that their evidence at the hearing was not clear. It was muddled. It was not convincing. It was unpersuasive. And that, like the other findings on the February 14 contempt order, are not subject to challenge here in these proceedings. The moving parties never had a consistent theory. Their theory of violation, their theory of contempt, changed essentially at every step of the way. There was some argument this morning about the district court's finding that the contempt proceedings were prosecuted by the wrong party in interest. And with respect to that point, I think it's important to note that the typical case, and that's what we're really distinguishing here, is an exceptional case versus a typical case. And the typical case may or may not be successful, but at least it's going to be prosecuted by the real party in interest. And it was also a consequence of the motion not being brought by the real party in interest created some of those discovery issues, which we've already mentioned. DPIPHs, failure to respond to subpoena, et cetera. One additional factor is the finding that the DERMAPEN parties lacked any commercial interest in enforcing the subpoena. In awarding fees, the district court found that the movements produced no evidence of damages and also found that the trademark had been abandoned. And that was part of the February 14 ruling. The mark had not been used for three years, and there was no evidence of intent to resume use, which presumption was not rebutted. Now, that's not before the court. That decision was not challenged on appeal, and it's therefore the law of the case. The appellants argue that abandonment is irrelevant to the enforcement of an injunction. And that may be true insofar as it goes, but abandonment is relevant to the subjective motivations, which are the criteria for exceptionality for an award of fees. Similarly, the appellants argue that they don't have to show damages. And it's true, that's not an element for contempt. But again, it's relevant to the subjective intent of the moving parties. Well, did the court make a finding of what the intent was? Does it just make findings that are relevant to intent, but then not draw any inferences itself as to what the intent of Dermapen was? Probably more of the latter, if we look at the district court's order ruling on attorney's fees. The latter being, I can't remember exactly how I framed the question. The latter being that the court did not make specific findings of intent. I don't recall that he specifically used the word intent, but certainly- Shouldn't we require such findings if the improper intent, the bad intent is an important factor in the sanction? Certainly, the subjective intent is one factor, as well as the reasonableness of the manner in which the litigation is prosecuted. And- Well, you don't think it's important that the district court didn't explicitly make a finding regarding intent? I think it's implicit in his ruling, where the district court recognized, this is a case where Dermapen and DPIPH produced no evidence of damages, where the evidence showed that Dermapen has no right to enforce the injunction, where the evidence showed that the trademark was abandoned, and where monetary sanctions were imposed, and where the moving parties were entitled to no relief against the non-parties. And I see my time has expired. Thank you, counsel. Unless my colleagues have further questions, just hold off a second. I'm good. No further questions presented, then your time is up. We'll hear the remaining time on the appellant side. Thank you. Thank you, Your Honor. A few quick points. Judge Hartz, and perhaps this might help respond to your questions, Lucero. You both raised questions about the standard of review here. I would point the court to a post-Octane case by this court, X-Layer v. Focused Nutrition, where Judge McHugh, in considering this standard of review, described that, you know, although a district court possesses broad discretion, it remains important to provide a concise but clear explanation about the reasons for its award, and such explanations must give us adequate basis for review. So, attempting to define implicit meanings in the court's rulings and subtext, or perhaps other findings, simply is not appropriate. Well, if we were to agree with you, do we re-band for the district court to do so? And isn't it somewhat preordained what he would do on the factual basis present? At a minimum, you should re-band. Based on the reasons that the district court did provide here, there is a basis for it. I'm sorry, I see I'm out of time. I assume I can just wrap up here. The reasons provided here, as I've explained, are irrelevant collateral attacks to the injunction that don't speak to whether or not the injunction was violated. If the party wanted to attack the injunction and needed to vacate the injunction, not potentially violate it, and then say that the injunction should never have been granted, that those attacks may be valid attacks to dissolve an injunction, not to obtain attorney's fees under the Lanham Act. So, those factors are irrelevant, and they should not be considered, and based on that, this court should be comfortable simply reversing the district court. But to your point, at a minimum, it should re-band to the district court, and on re-band, when considering the proper factors and not these collateral attacks, I'm confident that the district court will not find this to be a preordained decision, because under the proper factors, the parties here had a valid injunction. Thank you. Thank you, counsel. Your time is up, unless there are questions presented by my colleagues. No further questions. No, I'm good. Thank you. Thank you. Thank you, counsel, for your presentation this morning. Counselor excused. The case is submitted.